In The
United States, District Court
Southern District of Indiana
Terre Haute Division

SCANNED at WVCF and Emailed on
9-18-18 by SJ - 69 pages.
(date)   (initials)   (num)

Complaint under the Civil right Act, 42 U.S.C. § 1983

**FILED**
3:19 pm, Sep 18, 2018
U.S. DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
Laura A. Briggs, Clerk

Christopher A. Underwood,
          Plaintiff,

V.

Richard Brown, Warden,
Mandip Kaur Bartels, MD,
Samuel Byrd, MD, Wexford
Kim Hobson, H.S.A., Wexford
Regina Robinson, R.N., Wexford
Bobbi Riggs, R.N., Wexford
Corizon Medical, Inc.,
Wexford Health Sources, Inc.,
Carl Kuenzli, MD, Wexford
John Doe, Vice President, Wexford,
          Defendants.

Case No.   2:18-cv-425-WTL-MJD

Complaint For Damages And Demand For Jury trial

This is A § 1983 Action Filed by Christopher A. Underwood A prisoner,
Alleging violations of his constitutional rights and seeking money Damages,
Declaratory judgment, And injunction relief. The plaintiff requests a trial by jury.

Jurisdiction and venue

1.    This is a civil right Action under 42 U.S.C. § 1983. This Court has jurisdiction
under 28 U.S.C. § 1343. This Court Also has jurisdiction of this action under 28 U.S.C.
§ 1331 in that the matter and controversy arises under the fourteenth Amendment to the
Constitution of the United States, and the Eighth Amendment to the constitution of
the United States,

## Parties

2. Plaintiff Christopher A. Underwood, is a prisoner at the Wabash Valley Correctional Facility located in Carlisle, Indiana. Plaintiff was at all relevant times mentioned herein incarcerated at the Wabash Valley Correctional Facility Address PO Box 1111, Carlisle, Indiana 47838. Plaintiff identification number is # 863907.

3. Defendant Richard Brown, was at all relevant times herein a duly appointed qualified and acting Warden of the Wabash Valley Correctional Facility. Defendant Brown's address is PO Box 1111, Carlisle, Indiana 47838.

4. Defendant Mandip Kaur Bartels, M.D. was at all relevant times herein a duly appointed qualified and acting Regional Medical Director for Corizon/Wexford Medical, Inc. As a Regional Director Bartels is responsible for ensuring adequate medical care to prisoners. Defendant Bartels was the duly authorized representative and agent of defendants Corizon/Wexford, John Doe. Defendant Bartels address is

5. Defendant Samuel Byrd, was at all relevant times herein a duly appointed qualified and acting Doctor at Wabash Valley Correctional Facility. As a Doctor, defendant Byrd is responsible for ensuring adequate medical care to prisoners. Defendant Byrd was the duly authorized representative and agent of defendants Corizon/Wexford, and John Doe, Bartels. Defendant Byrd address is PO Box 1111, Carlisle, Indiana 47838

6. Defendant Kim Hobson, R.N., H.S.A. was at all relevant times herein a duly appointed qualified and acting nurse and health service administrator for Corizon/Wexford at Wabash Valley Correctional Facility, as a health service administrator, defendant Hobson is responsible for ensuring that adequate medical care is given to prisoners. Defendant Hobson was the duly authorized representative and agent of defendants Corizon/Wexford, John Doe and Bartels. Defendant Hobson's address is PO Box 1111, Carlisle, Indiana 47838

7. Defendant Regina Robinson R.N. was at all relevant times herein a duly appointed qualified and acting Director of Nursing at Wabash Valley Correctional Facility. As a Nurse and Directing of nurse defendant Robinson is responsible for ensuring that adequate medical care is given to prisoners. Defendant Robinson was the duly authorized representative and agent of defendants Corizon/Wexford, John Doe and Bartels. Defendant Robinson's address is PO Box 1111, Carlisle, Indiana 47838

8.  Defendant Bobbie Riggs R.N., was at all relevant times herein a duly appointed qualified and acting nurse at Wabash Valley Correctional Facility. As a nurse, defendant Riggs is responsible for ensuring and administering adequate medical care to prisoners. Defendant Riggs was the duly authorized representative and agent of defendants, Corizon / Wexford, John Doe, Kuenzli and Bartels. Defendant Riggs address is PO Box 1111, Carlisle, In 47838.

9.  Defendant Carl Kuenzli, MD. was at all relevant times herein a duly appointed qualified and acting Regional Medical Director for Wexford Health Sources Inc, As a Regional Director Kuenzli is responsible for ensuring adequate medical care to prisoners. Defendant Kuenzli was the duly authorized representative and agent of defendants Wexford and John Doe. Defendant Kuenzli Address is

10. Defendant, Corizon Medical, Inc, was at all relevant times herein a duly appointed qualified and acting private contractor hired to provide medical care for prisoners for the Wabash Valley Correctional Facility. Defendant Corizons address is Govt Ctr (South) 302 W. Washington St Rm E-334 Indpls, In 46204.

11. Defendant Wexford Health Sources, Inc, was at all relevant times herein a duly appointed qualified and acting private contractor hired to provide medical care for prisoners for the Wabash Valley Correctional Facility. Defendant Wexford address is, 9245 N. Meridian Street, suite 120, Indianapolis, In 46260.

12. Defendant John Doe, Vice President, Corizon / Wexford, Medical / Health Inc, was at all relevant times herein a duly appointed, qualified and acting Corizon / Wexford vice president. As vice president John Doe is responsible for ensuring that as a private contractor and the supervisory authority over all Department of Correction nurses and physicians, who are subject to his orders that adequate medical care is being provided to prisoners. Defendant John Doe's address is

13. All defendants are sued in their individual and official capacity.

14. Relief is sought against each and all defendants as their agents, assistants, successors, employees and persons acting in concert or cooperation with them or at their direction or under their supervision.

15. At all relevant times herein the defendants Brown, Bartels, Byrd, Kuenzli, Hobson, Robinson, Riggs, Corizon, Wexford and John Doe have acted under the color of authority of the law of the state of Indiana or in active concert with such defendants who are so acting.

## Exhaustion of Available Remedies

16. The plaintiff Underwood has taken reasonable steps to comply and complete all prison grievance procedures and process. Have exhausted all administrative remedies based on plaintiff Underwood knowledge and belief for the filing of this complaint.

See Attached Grievances

See Attached Health Care Requests

See All relevant documents

## Previous Lawsuit:

17. Randle Anderson, Superintendent, Sergeant John Doe, Officer Rollins, Dr. Arshad Asghar, Dr. Parikh and Sergeant Ruhersma, United States District Court Northern District of Indiana, Cause No. 3:01 cv 210, Dismissed pursuant to 28 U.S.C.§ 1915 A.

## Statement of Material Facts / State a claim of due process

18. On June 27, 1997 plaintiff under went major back surgery at Wishard Hospital in Indianapolis, In. where a bulging disk was removed from his spine.

19. On June 28, 1997, approximately one day after surgery with stapples in his lower back, and unable to walk, plaintiff was placed in legs shackles and handcuffs by officers. After being secure in mechanical restraints plaintiff was put in a wheel chair and wheeled to a van.

20. Once at the van plaintiff was removed from the wheel chair and placed in the back seat of this van. Plaintiff was forced to sit up right and strapped to the seat of this van, while suffering from excruciating pain.

21. Plaintiff was transported from Wishard Hospital, back to Indiana State prison located in Michigan City, In. which was a four (4) hour drive one way. During the course of this trip, plaintiff was subjected to excruciating pain as a result of just recently undergoing back surgery, as well as the jumping and bumping of the van while traveling down the high way.

22. The pain was so intense, that plaintiff cried during this entire trip.

23. The pain was so intense that plaintiff attempted to undue his seatbelt so he could lay down, but was prevented from doing so by officers.

24. Once plaintiff arrived at I.S.P. he was placed in the prison Hospital Ward.

25. Several days after plaintiff arrive back at I.S.P. he was seen by the doctor who acknowledged that there was no way he should have been transported back in the condition he was in.

26. Due to complications plaintiff was experiencing, an MRI was done on his back to determine what might be causing him problems.

27. In April of 1999, the MRI revealed that two more disks had slipped in plaintiffs back, which had been caused by rigorous jumpy and bumpy transportation ride he was subjected to a day after major back surgery on June 28, 1997.

Statement of Material facts / State a claim of due process

28. Specifically the MRI revealed that at plaintiff's L3-4: Disc bulging is present. There is degeneration from L3 through S1. There is left lateral disc bulging, which may impinge on the left lateral nerve root outside of the neural foramen. The disc bulge also flattens the anterior thecal sac, and combines with facet degeneration and causes mild to moderate spinal stenosis.

29. L4-5 There has been a partial left laminectomy performed. Residual disc bulging is present, right greater than left, with right paracentral annular tear. Minimal epidural fibrosis is present.

30. Plaintiff was transferred to Wabash Valley Correctional Facility in November, 2001 and since his arrival plaintiff has submitted approximately 56 health care request, all complaining about excruciating pain in his back, right foot and cramps and has now extended into his buttocks.

31. Plaintiff would show a pattern of reluctance on the part of Defendants Corizon and its regional Medical Director and here recently Wexford to prescribe certain medication or send offenders outside prison walls for specialized testing, diagnoses or treatment, as ways to cut costs. The results are often unnecessary suffering. The cutting of corners to save money resulting in inadequate care. Plaintiff's medical records, health care requests and complaints span over 16 years.

32. Plaintiff has been seen countless times over the past sixteen years by several doctors whos reccommended several MRIs that was later denied by health care provider Corizon and its regional medical director, and here recently Wexford. Corizon has changed its name twice over the last several years, after mergers, formerly operating as Prisoner Health Services and Correctional Medical Services.

33. Corizon / Wexford actions has caused plaintiff years of unnecessary and wanton infliction of pain and injury.

34. Plaintiff have been verbally diagnosed by an institutional doctor, as having Sciatica. But no tests have been performed to verify or rule out the diagnosis and plaintiffs suffering continued.

STATEMENT OF MATERIAL FACTS / STATE A CLAIM OF DUE PROCESS

35. Plaintiff have Sciatica flare ups that leave plaintiff completely unable to walk where plaintiff sciatica nerve become pinched.

36. Corizon/Wexford was deliberately indifferent to plaintiff Underwood's medical need for many years while at WVCF since 2001. Due to the defendants denied treatment, having caused plaintiffs condition to worsen, serious sciatica issues in the back, legs, foot, buttocks and have recently experiencing a pinch nerve now on my left side, daily pain. The WVCF's Drs, medical staff, Corizon, Wexford and its regional medical Director refused the need of some-in hospital diagnostic tests, to discover the extent of the damage. Denying the needed medical care treatment for cost saving reasons.

37. Plaintiff had gotten so frustrated with medical he stopped submitting health care requests because it was all to no avail and plaintiff was made to suffer.

38. Defendants Corizon/Wexford, John Doe either expressly or impliedly permitted, authorized, ratified or knowingly acquiesced in such policy and practice.

39. Defendants was aware that plaintiffs condition was in fact deteriorating and still did nothing to treat this deteriorating state.

40. On January 2, 2017, plaintiff filled out a request for Medical Health care requesting to be seen by a doctor, explaining he has had previous back surgery and that he's experiencing numbness in his right foot which the pain had become unbearable. Also his back is giving out to the point plaintiff has to sleep in a chair because he couldn't jump on and off the top bunk, expressing that the beds do not have ladders on them.

41. On January 4, 2017 plaintiff was seen at nursing sick call by nurse Bobbie Riggs and was given back exercises and told he couldn't see the doctor and that plaintiff would be charged for the visit.

42. On January 6, 2017 plaintiff filed an informal grievance, expressing the fact he was being denied access to adequate medical attention. Plaintiff was not allowed to see a doctor concerning the cramps in his legs the pain in his right foot. Plaintiff went on to express that he did in fact submit approximately 80 health care forms regarding his back, cramps and right foot.

7.

STATEMENT OF MATERIAL FACTS / STATE A CLAIM OF DUE PROCESS

43. On January 20, 2017 in response to plaintiffs informal grievance Director of Nursing, Regina Robinson, RN responded by telling plaintiff "it policy is you see nursing twice before allowed to see doctor." Robinson went on to state that plaintiff didn't have a chronic diagnosis of back pain therefore you will be charged $5.00 when seen and that plaintiff was instructed to submitt a HCRT in a reasonable amount of time (4-6 weeks) if problems persist.

44. Contrary to the medical response plaintiff received from Defendant Robinson, plaintiff was never instructed to submitt a HCRT in a reasonable amount of time (4-6 weeks) if problems persist. (refer to Health Care Form 239836.)

45. Not satisfied with the first level informal grievance response plaintiff appealed that decision, expressing he would like to be seen by a doctor considering this is such an ongoing problem and have had numerous follow ups regarding this issue, again 30 health care forms, 43 of those since arriving at WVCF in 2001. Plaintiff went on to request that an MRI be ordered and approved with his serious medical issue diagnos and that he be placed on a bottom bunk.

46. Plaintiff also went on to complain with his back issues why should he have to climb upon a chair and then jump up on a top bunk with his serious back issues and given back exercises and denied access to a doctor.

47. On February 27, 2017 Health Service Administrator Kim Hobson, RN, responded to plaintiffs next level grievance by stating that this is not a medical diagnosis that plaintiff is seen in Chronic Care for and that plaintiff do not meet the criteria for a lower bunk pass. see exhibits

48. Contrary to what defendant Hobson says, since arriving here at WVCF plaintiff has had numerous bottom bunk passes for his chronic back issues. see exhibits

49. Plaintiffs medical records, previous MRI results were readily available, but not considered when prescribed treatment was given by defendant Riggs, and later authorized and ratified such prescribed treatment, defendants Health Service Administrator Kim Hobson, RN, and Director of Nursing Regina Robinson RN, in their response to plaintiff grievance. see exhibits

50. On March 9, 2017, again not satisfied with the grievance response plaintiff filed an appeal for the final level of review, but all to no avail. And plaintiff was made to suffer.

STATEMENT OF MATERIAL FACTS / STATE A CLAIM OF DUE PROCESS

51. On April 7, 2017, plaintiff for the second time filled out a request for Health Care, requesting to be seen by a doctor, complaining about experiencing alot of back pain, constant daily cramps in both legs and excruciating pain in right foot.

52. On April 8, 2017 plaintiff was seen at nurse's sick call and was referred to MD for further evaluation.

53. On or about April 13, 2017 plaintiff was seen by doctor Samuel Byrd who ordered plaintiff a back brace as well as medication for the cramps in his legs.

54. On July 27, 2017 plaintiff filled out a request for Health Care requesting to see the doctor regarding the medication he was taking. (Tofranal)

55. Plaintiff was seen at nursing sick call on July 31, 2017 and scheduled for doctor.

56. Plaintiff was seen by Dr. Byrd who ordered a blood and stool test.

57. On January 28, 2018 plaintiff filled out a request for Health Care requesting to see the doctor concerning his medication, cramps back and climbing on and off the top bunk.

58. On January 29, 2018 plaintiff was seen at nursing sick call and scheduled for Dr.

59. On or about February 2, 2018 plaintiff was seen by Dr. Byrd who informed the plaintiff at that time, that the contractor wouldn't approve the MRI until plaintiff tried some other alternative treatment and that he didn't meet the criteria for a bottom bunk. Dr. Byrd Also ordered X rays for plaintiff's back.

60. On February 14, 2018 plaintiff filled out a request for Health Care requesting to see the doctor to go over plaintiff recently taken X rays.

61. On February 16, 2018 plaintiff was seen by nurse Riggs who informed plaintiff that his X-rays was negative and he couldn't see the doctor with negative results.

Statement of Material facts / state a claim of due process

62. On February 20, 2018 plaintiff was seen by doctor Byrd. At this time plaintiff supplied Dr. Byrd with a copy of his previous MRI. After reviewing plaintiffs x-rays and previous MRI that was taken approximately 20 years ago, Dr. Byrd assured plaintiff that his back had gotten worse since his last MRI. He put plaintiff on a ten day prescription of prednisone 20 mg (steroides). Also changed plaintiffs medication from Prevalite to Tylenol and explained that the numbness plaintiff was feeling in his foot was actually a pinch nerve.

63. Plaintiff symptoms includes stiffness, and pain across the small of the back that extends into the buttocks, the legs, foot, numbness-weakness of the foot, cramps, also pain daily and serious burning sensations in the right foot daily. The condition is aggravated with pro long walking, standing and jumping on and off the top bunk that plaintiff is assign.

64. Plaintiff assured Dr. Byrd that his condition was getting worse as evident by another, as plaintiff believe to be a pinch nerve again now on his left side.

65. Plaintiff would contend that any physician and layperson alike would recognize the symptoms as a condition, taking into consideration plaintiffs prior surgery and previous MRI results mandating treatment and further diagnosis, and thus failure to provide such treatment could result in the unnecessary infliction of pain, thus constituting deliberate indifference to plaintiff serious medical needs.

66. Plaintiff had been diagnosed with a pinch nerve but no tests had been recommended or performed to verify or rule out the diagnosis and plaintiffs suffering continued.

67. Defendant Byrd aware, that plaintiffs condition was in fact deteriorating and still did nothing to treat this deteriorating state, No pain medication for his back and foot, while still refusing to prescribe a bottom bunk pass.

68. On March 5, 2018 plaintiff filled out a request for health care requesting to see the doctor concerning the pinch nerve in his back and plaintiffs medication as the medication was doing nothing for his pain.

Statement of Material Facts / State a claim of due process

69. On March 7, 2018 plaintiff was seen at nursing sick call by defendant Riggs who informed plaintiff that he couldn't see the doctor, However, plaintiff's medication was later doubled & changed to 600mg without seeing the doctor.

70. On March 22, 2018 plaintiff filled out a second request for health care requesting to see the doctor concerning the pinch nerve in his back and plaintiff's medication.

71. On March 26, 2018 plaintiff was again seen at nursing sick call by nurse Riggs who again told plaintiff he couldn't see the doctor, to continue on medication and consider this an education. And that plaintiff didn't meet criteria for bottom bunk.

72. On April 2, 2018 for the third time plaintiff filled out a request for health care wanting to see the Doctor, complaining about bad back, pain in foot, MRI and bottom bunk.

73. On April 10, 2018 plaintiff was seen by Dr. Byrd who prescribed a different medication and ordered physical therapy.

74. On May 3, 2018 plaintiff was sent out to see a physical therapist.

75. On May 21, 2018 plaintiff filled a request for health care requesting to see doctor as a follow up after physical therapy and complaining about the pain getting worse in his back.

76. On May 29, 2018 plaintiff saw Dr. Byrd as a follow up after physical therapy. Dr. Byrd recommended that plaintiff get an MRI and also possible shots in back, depending on what the MRI reveals.

77. On July 9, 2018 plaintiff filled a request for health care wanting to know the status of his MRI and to see Dr. about bottom bunk, medication and pain.

78. On July 12, 2018 plaintiff was seen at nursing sick call by nurse Kelly and was told she didn't know the status of plaintiff MRI and that she would get back to plaintiff on that and she'll see about putting plaintiff in to see the doctor.

79. On or about July 15, 2018 plaintiff received his request for health care back informing him that he had been refered to M.D.

11

80. On 19, July 2018 plaintiff was informed by a C.O. that he had a blood test scheduled for the morning, and not to eat anything.

81. On July 20, 2018 plaintiff submitted his second request for health care stating that he need to see the doctor concerning his back and that he's in constant pain, the cramps and the pain in his buttocks and foot. Bottom bunk and that he's slept on the floor three times in the past week, his medication and the status of his MRI recommendation.

82. On or about July 24, 2018 plaintiff received his second request for health care back informing him that his MRI had been denied at this time.

83. On August 17, 2018 plaintiff submitted his third request for health care, having been told he was refused to MD, it's now been well over a month since he was told he was refused to MD and has yet to see a doctor.

84. On or about August 20, 2018 plaintiff received his third request for health care, back informing him that he had been scheduled with MD.

85. On August 24, 2018 plaintiff was seen by Dr. Byrd, at that time plaintiff explain to dr. Byrd that all the seizure and antidepressant medication he's prescribing plaintiff for pain is doing absolutely no good and that plaintiff is constantly in pain. Dr. Byrd changed plaintiffs medication again, defendant also recommended that plaintiff be placed on a bottom bunk.

86. Plaintiff requested to review his medical packet and after review and the requesting of copies of some documents. Plaintiff discovered that he was in fact enrolled in chronic care for his back and have been since October 5, 2012 and that his last visit being August 1, 2017.

87. Contrary to the medical response plaintiff received from both Defendants Kim Hobson R.N., HSA and Regina Robinson R.N., DON, plaintiff was if you believe these documents in fact enrolled in chronic care for his back. Further substantiating that defendants never reviewed plaintiffs medical records prior to prescribing treatment, denying plaintiff access to a doctor and consequently using the fact that plaintiff do not have a chronic diagnosis of back pain to deny plaintiff a bottom bunk pass, thus constituting cruel and unusual punishment and deliberate indifference to an objectively serious medical need.

Statement of Material Facts / State a Claim of due process

88. Plaintiff has suffered needless chronic and substantial pain and the loss of mobility for years and was ordered to take seizure and antidepressant medication for his pain.

89. The treatment plaintiff received was so blatantly inappropriate as to evidence intentional mistreatment likely to seriously aggravate his condition. Defendants obdurate refusal to alter plaintiffs course of treatment despite his repeated requests that the medication was not working and his condition was getting worse.

90. Defendants insisted on continuing course of treatment that the doctors knew were painful and ineffective.

91. Defendants Bartels and Kuenzli, as the Regional Medical Director has supervisory authority over department of Correction nurses and physicians, who were subject to their orders.

92. As Regional Medical Director for Wexford and Corizon Dr. Bartels and Kuenzli review requests for non-formulary medications, review requests for outside consultations and make alternative treatment decisions.

93. On May 30, 2018 Dr. Byrd recommended an MRI, which report detailed plaintiffs previous MRI results that plaintiff supplied, 2016 X rays and recent X ray results. Plaintiffs symptoms and Dr Byrds belief that what plaintiff is experiencing sounds like a possible L4/L5 Radiculopathy, the sleeping on the floor vs. top bunk as plaintiff simply cannot get on/off top bunk at that time unable to shower or even get his shoes on.

94. As R.M.D. Dr. Kuenzli denied the MRI request ordering plaintiff to be managed onsite, however he offered no other alternative treatment. Denying the needed medical care treatment for no other reason than cost saving. Fearing the results of a possible surgery and further treatment as well as the cost of the MRI it-self. Thus constituting deliberate indifferent to plaintiffs deteriorating medical condition.

95. Defendant Brown have for a long period of time known of the policy and practice alleged in paragraph 31 thru 94

Statement of Material Facts / Statement of Claim of Due Process

96. Prior to filing this complaint, plaintiff had filed numerous of grievances to WVCF medical department concerning the denial of medical treatment.

97. Defendant Brown and John Doe failed to take corrective actions.

98. Plaintiff contends that the practice of not sending offenders outside prison walls for specialized testing, diagnoses or treatment as ways to cut costs is a common occurrence and accepted policy and practice at WVCF

99. Defendants Brown and John Doe either expressly or impliedly permitted, authorized, ratified or knowingly acquiesced in such policy and practice.

100. Defendants Brown and John Doe, knew that these incidents were occurring on a frequent basis and despite such knowledge refused to take corrective measures to prohibit such policy and practice.

101. Defendants Brown, John Doe, Byrd, Riggs, Robinson, Hobson, Bartels, Kneuzli Corizon and Wexford deliberately and maliciously deprived plaintiff of his constitutional rights.

## Legal Claims

102. The facts related above disclose concerted and systematic effort in reckless disregard by the defendants for plaintiffs constitutionally secured civil rights, including but not limited to those enumerated alleged succeeding paragraphs.

## Cause of Action

103. Defendants violated plaintiffs eight Amendment rights to the united states constitution;

"Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."

104. Defendants violated plaintiff Fourteenth Amendment rights to the united states constitution;

"All persons born or naturalized in the United State, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No state shall make or enforce any law which shall abridge any privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny any person within its jurisdiction the equal protection of the law."

105. Defendants violated Article 1, section 15, and section 16, of the constitution of the State of Indiana.
§ 15 Person arrested or confined; treatment
Section 15. No person arrested, or confined in jail, shall be treated with unnecessary rigor.
§ 16 Excessive bail shall not be required. Excessive fines shall not be imposed cruel and unusual punishment shall not be inflicted. All penalties shall be proportioned to the nature of the offense.

106. Plaintiff, Christopher A. Underwood, a State prisoner, is alleging violation of his Constitutional rights to receive adequate medical care and treatment, and seeking injunctive relief and money damages. Plaintiff also seeks injunction and damages pursuant to the American with disabilities act and the Rehabilitation act.

107. The following defendants acted in both their individual and professional capacities, under color of state law to deprive plaintiff of those rights protected by the United States Constitution, the Constitution of the State of Indiana, and promulgated rules.

108. Doctor Carl Kuenzli, acted in both his individual and official capacity under color of state law to deny plaintiff of his constitutionally protected rights. Dr. Kuenzli was the regional medical Director who denied mandated treatment and medical care for plaintiff as ways to cut cost, constituting deliberate indifference to an objectively serious medical need.

109. Doctor Mandip Kaur Bartels acted in both his individual and official capacity under color of state law to deny plaintiff of his constitutionally protected rights. Dr. Bartels was the regional medical Director who denied mandated treatment and medical care for plaintiff as ways to cut cost, constituting deliberate indifference to an objectively serious medical need.

110. Doctor Samuel Byrd acted in both his individual and official capacity under color of state law to deny plaintiff of his constitutionally protected rights. Dr. Byrd failure to provide plaintiff with adequate examination and treatment for his chronic back problems, in denying the needed medical care treatment for cost saving reasons. Dr. Byrd's refusal to provide plaintiff with a bottom bunk pass and forcing him to jump up and down off a top bunk constitutes deliberate indifference to an objectively serious medical need.

111. Kim Hobson, R.N., H.S.A. acted in both her individual and official capacity under color of state law to deny plaintiff of his constitutionally protected rights. Defendant Hobson refused to adequately investigate plaintiff's serious medical needs by not reviewing plaintiff's medical records and referring him to a doctor, thus refusing plaintiff needed medical care and treatment that caused plaintiff to suffer needless pain and injury, constitutes deliberate indifference to an objectively serious medical need.

112. Regina Robinson, R.N., D.O.N. acted in both her individual and official capacity under color of state law to deny plaintiff of his constitutionally protected rights. Defendant Robinson refused to adequately investigate plaintiff's serious medical needs by not reviewing plaintiff's medical records and referring him to a doctor, thus refusing plaintiff needed medical care and treatment that caused plaintiff to suffer needless pain and injury, constituting deliberate indifference to an objectively serious medical need.

113. Bobbie Riggs, R.N. acted in both her individual and official capacity under color of state law to deny plaintiff of his constitutionally protected rights. Defendant Riggs failed to review plaintiff's medical records and refer him to a doctor befor prescribing treatment. Defendant refused plaintiff needed medical care and treatment that caused plaintiff to suffer needless pain and injury, constituting deliberate indifference to an objectively serious medical need.

114. Richard Brown is WVCF's Warden and acted in both his individual and official capacity under color of state law to deny plaintiff of his constitutionally protected rights as the ruling authority of this facility is aware of his staffs facility Medical Department / Grievance Department for the abuses done to the plaintiff and other offenders.

115. Corizon Medical, Inc., is a private contractor hired to provide medical care for prisoners of the Indiana Department of corrections and acted in both its individual and official capacity to deny plaintiff of his constitutionally protected rights. Corizon has refused plaintiff needed medical care and treatment for many years, that has caused plaintiff to suffer needless pain and injury as ways to cut costs. Constituting deliberate indifference to plaintiff's serious medical needs.

116. Wexford Health Sources, Inc., is a private contractor hired to provide medical care for prisoners of the Indiana Department of corrections and acted in both its individual and official capacity to deny plaintiff of his constitutionally protected rights. Wexford has refused plaintiff needed medical care and treatment that has caused plaintiff to suffer needless pain and injury as ways to cut costs. Constituting deliberate indifference to plaintiff serious medical needs.

117. John Doe is vice president of Wexford and acted in both his individual and official capacity under color of state law to deny plaintiff of his constitutionally protected rights. John Doe as the ruling authority of Wexford is aware of his companys policy and practice of the cutting of corners to save money resulting in inadequate care, refusing plaintiff needed medical care and treatment that has caused plaintiff to suffer needless pain and injury. Constituting deliberate indifference to plaintiff serious medical needs.

118. The actions of defendants stated in paragraphs 40 thru 101 denied plaintiff of his Eight Amendment right to the United States constitution.

119. Plaintiff Eight Amendment right to be free of cruel and unusual punishment were violated when:

He was denied access to adequate medical treatment after complaining about numbness in his right foot, where the pain had become unbearable at times, cramps and a bad back thats going out on him at times to the point he's forced to sleep in a chair because he couldnt jump on and off a top bunk as the beds do not have ladders on them

120. The actions of defendants stated in paragraphs 40 thru 50 denied plaintiff of his Eight Amendment right to the United States constitution.

121. The failure of defendants Riggs, Hobson and Robinson to provide plantiff with adequate examination and medical treatment by not reviewing his medical packet befor prescribing treatment and refering him to a doctor considering his long history of numbness in his foot, cramps and chronic back problems, constitutes deliberate indifference to the plantiff serious medical needs.

122. The failure of defendants Riggs, Hobson and Robinson to provide plantiff with adequate examination and medical treatment by not reviewing his medical packet befor prescribing treatment and refering him to a doctor considering his long history of numbness in his foot, cramps and chronic back problems, constitutes the tort of negligence under the law of Indiana.

### Second cause of action

123. The actions of defendant stated in paragraphs 53 thru 85 denied plantiff of his eight Amendment right to the united States constitution.

124. The failure of defendant Byrd to provide plantiff with adequate examination and treatment for his injured back and the refusal to provide plantiff with a bottom bunk pass, while forcing him to jump on and off a top bunk constitutes deliberate indifference to the plantiff serious medical needs.

### Third cause of action

125. The actions of defendants stated in paragraphs 40 thru 50 as well as paragraphs 40 thru 101 denied plantiff of his eighth Amendment right to the united States constitution.

126. The failure of defendants to provide plantiff with adequate examination and treatment for his chronic and injured back. In denying the needed medical care treatment for cost saving reasons, constitutes deliberate indifference to plantiffs serious medical needs.

The supreme court has held that a doctor providing medical care and services under contract acted under color of state law, since the state had delegated its constitutional obligation to provide medical care to him. See West v. Atkins, 487, U.S. 42, 54-57, 108 S. Ct 2250 (1988). The supreme court has also stated generally that the state prisoners "Enjoy a right of action against private correctional providers under 42 U.S.L. § 1983."

The issues presented in this complaint should proceed past the screening stage. "A complaint should not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would demonstrate an entitlement of relief." Vickery v. Jones, 100 F. 3d. 1334, 1341 (7th cir 1996.). Also, "When analyzing the dismissal of a complaint, under Fed. R. Civ. P. 12 (b)(6), I accept the factual allegations contained in the complaint as true and construe them in the light most favourable to the plaintiff." Jones v. Helsper, 146 F. 3d. 452, 457 (7th cir 1998)

The plaintiff has merit in this cause. "To succeed in an Eighth Amendment cruel and unusual punishment claim, the prisoner must show that there were acts and omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Duane v. Lane, 959 F. 2d 673, 677 (7th cir 1992) (Quoting Estelle v. Gamble, 429 U.S. 97, 106, 50 L. Ed. 2d 251, 97 S. Ct 285 (1976).

The defendants were, and continue to be, deliberately indifferent to plaintiffs serious medical needs, causing the unnecessary and wanton infliction of pain and suffering. "A serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctors attention, and if untreated could result in further significant injury or unnecessary pain, and significantly affects the persons daily activities or features chronic and substantial pain." Gutierrez v. Peters, 111 F. 3d 1364, 1373 (7th cir 1997) All of plaintiffs claims in this complaint have been diagnosed by a physician mandating treatment, or they are so obvious a lay person would easily recognize the need for a doctors attention.

Corizon, Wexford, Baeten, Kuenzli and the Indiana Department of Corrections officials were made aware of plaintiffs serious medical needs through administrative remedies and request for care and chose to ignore those needs, for cost saving reasons Williams v. Ramos, 71 3d 1246 (7th cir 1995).

Eighth Amendment imposes upon persons officials duty to maintain humane conditions of confinement, including adequate food, clothing, shelter, and medical care also Rhodes v. Chapman, 452, US, 337, 69 L. Ed. 2d 59, 101 S. Ct 2392 (1981) practices that involves unnecessary and unrestricted infliction of pain are prohibited.)

Pain management for chronic long term pain relief in the Department of corrections borders on barbarous behavior by defendants. Plaintiff submitted numerous grievances, requests for health care concerning his pleas for assistance with pain management for his numerous untreated medical issues that have caused plaintiff years of chronic pain and loss of mobility. See Dixon v. Godinez, 114 F. 3d 640 (7th cir 1997) (Prison conditions which might not ordinarily violate Eighth Amendment may nonetheless do so if it persist over extended period of time.)

Plaintiff's psychological pain provides a seperate basis for recovery. Pain is cognizable for constitutional purpose, and the court can take into account psychological pain when considering a case alleging that a constitutional violation has taken place. The Supreme Court has stated: The defendants wanton infliction of pain meets the "objective" and "subjective" components of this complaint. The Eighth Amendment prohibits the unnecessary and wanton infliction of "pain," rather than "injury". Pain in its ordinary meaning surely includes a notion of psychological harm. I am unaware of any precedent of this court to the effect that psychological pain is not cognizable for constitutional purpose. SEE Hudson v. McMillian, 503 U.S.1, 16 (1992) (Blackmun J., concurring) (internal citation omitted); SEE also, St. Germain v. Goord, No. 96-CV-1560 (ASP/dih), 1997 WL 627552, at *3-4 (W.D.N.Y. Oct 8, 1997) (inmates misery, anguish psychological pain, and fear found actionable.)

## Relief Requested

Wherefore, plaintiff requests this Honorable court grant the following relief:

A.  Issue the requested temporary restraining order as to the medical issues presented;

B.  Issue an injunction requiring defendants to provide the requested adequate medical care and treatment;

C.   Issue a declaratory judgment that defendants did in fact violate the plaintiffs as stated in the body of this complaint.

D.   Issue an injunction order, addressing each issue as set out in the body of the complaint, and order defendants to refrain from the unconstitutional practices of denying prisoners access to a doctor until he's seen by a nurse two or three times.

E.   Grant compensatory damages in the following amount:

1.   $200.000 Against defendant John Doe
2.   $200.000 Against defendant Wexford
3.   $200.000 Against defendant Corizon
4.   $100.000 Against defendant Kaenzli
5.   $100.000 Against defendant Bartels
6.   $100.000 Against defendant Brown
7.   $50.000 Against defendant Byrd
8.   $50.000 Against defendant Hobson
9.   $50.000 Against defendant Robinson
10.  $50.000 Against defendant Riggs

F.   Grant punitive damages of $10.000 against each of the defendants for mental and emotional distress.

G.   Grant such other relief as this court deem fair and just.

Respectfully Submitted

Chris Underwood

Chris Underwood #863907

Verification

I, Christopher A. Underwood hereby verify and affirm under the penalties for perjury that the above and foregoing representations are true and correct to the best of my knowledge and belief.

Chris Underwood

Chris Underwood (#863907
Plaintiff

Certificate of Service

A copy of the foregoing has been served on adverse parties (or their counsel) pursuant to the courts prisoner E-Filing program.

Chris Underwood #863907

22.